IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Senior Judge Wiley Y. Daniel**

Civil Action No.   12-cv-02932-WYD

JEREMY MALIK,

     Plaintiff,

v.

CAROLYN W. COLVIN, Acting Commissioner of Social Security,

     Defendant.

**ORDER**

THIS MATTER is before the Court on review of the Commissioner's decision that denied Plaintiff's application for disability insurance benefits ["DIB"].  For the reasons stated below, this case is reversed and remanded to the Commissioner for further fact finding.

I.    BACKGROUND

Plaintiff, born in 1985, applied for DIB benefits in May 2011, alleging disability beginning in January 2011.  (Administrative Record ["AR"] 349.)  Plaintiff was 25 years old on his alleged onset date, and was thus a younger individual within the meaning of the Social Security Act ["the Act"].  (*Id.* 31.)  A military veteran, Plaintiff alleged he was disabled due to post-traumatic stress disorder, chronic depression and anxiety, headaches, and chronic lower back pain.  (*Id.* 104, 143.)

By way of background, Plaintiff was deployed to Iraq from September 2008 through August 2009 where he was a driver for convoy security.  (AR 38.)  He was

responsible for looking out for IEDs, insurgents, and anyone trying to do harm to the convoy.  (*Id.* 39.)  After his return to the United States, Plaintiff complained to his medical providers of having, *inter alia*, insomnia and nightmares, anxiety attacks, paranoia that someone was trying to kill him, hypervigilance, inability to control his emotions and anger, obsessive thoughts of dying and suicide, social isolation, impaired ability to focus or concentrate, and marital problems.  Plaintiff was hospitalized for psychiatric treatment in January 2011 and September 2011.  (*Id.* 39, 244-45, 772-78.)  It was recommended that Plaintiff not be retained as a soldier because he could not operate in the military (*id.* 218), and he was phased out of the Army.  (*Id.*)[1]

      Plaintiff's application was denied initially (AR 54-65, 67-69), and he requested a hearing before an administrative law judge ["ALJ"] (*id.* 72-73).  A hearing was held in March 2012.  (*Id.* 34-53.)  The ALJ issued a decision on April 3, 2012, finding that Plaintiff was not disabled at step five of the sequential evaluation.  (*Id.* 21-33.)

      At step one the ALJ determined that Plaintiff's military service since his onset date was neither substantial nor gainful and that he had not engaged in substantial gainful activity since that date.  (AR 23.)  At step two, the ALJ found that Plaintiff had

---

[1] As part of the military's assessment, Captain Trout stated in a Commander's Performance and Functional Statement that Plaintiff could not operate around other people at all and that even one other person could upset him.  (AR 218.)  Staff Sergeant Salas stated that Plaintiff had demonstrated that he was not mentally stable, that he was unable to work well with others because of his temperament, and he required a lot of special attention.  (*Id.* 225.)  Staff Sergeant Riddle wrote based on his observations as Plaintiff's supervisor that Plaintiff was unfit for work in the "public aspect", that there had been several occasions in which Plaintiff had to be removed from the normal social group at work due to his overreactions to situations that a "normal" person would not get upset about, that Plaintiff was prone to panic attacks when put into moderately stressful situations, and that he believed that it is in the public's best interest to "prevent Jeremy from any traditional working situations."  (*Id.* 226.)  Finally, a fellow soldier wrote a letter describing Plaintiff as mentally unstable, anxious, depressed, suicidal, and homicidal.  (*Id.* 224)  He stated he had seen Plaintiff "explode" multiple times over the littlest things, and that he did not think Plaintiff would be able to maintain any employment after he left the Army because of his lack of stress management and difficulty with personal interactions and coping with crowds.  (*Id.*)

severe impairments of anxiety disorder and depressive disorder. (*Id.* 23-24.) At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments. (*Id.* 25.)

The ALJ then assessed Plaintiff's residual functional capacity ["RFC"], finding that while Plaintiff has the capacity "to perform a full range of work at all exertional levels", he had certain nonexertional limitations regarding his mental impairments. (AR 26.) These are discussed in Section II.B.1, *infra*. At step four, the ALJ found that Plaintiff could not perform his past relevant work. (*Id.* 31.) At step five, relying on vocational expert testimony, the ALJ found that Plaintiff could perform other work existing in significant numbers in the national economy. (*Id.* 32.) Accordingly, the ALJ concluded that Plaintiff was not disabled within the meaning of the Act. (*Id.* 33.)

The Appeals Council denied Plaintiff's request for review of the ALJ's decision (AR 1-4), making the ALJ's decision the Commissioner's final decision. *See* 20 C.F.R. § 422.210(a). Plaintiff timely requested judicial review, and this appeal followed.

Plaintiff argues that the ALJ erred in assessing his credibility, and in particular his complaints about morning drowsiness caused by his medications. He also argues that the ALJ erred in assessing his headaches and in weighing the medical source opinions. Finally, Plaintiff argues that the ALJ erred in determining his RFC.

II. ANALYSIS

    A. Standard of Review

A Court's review of the determination that a claimant is not disabled is limited to determining whether the Commissioner applied the correct legal standard and whether the decision is supported by substantial evidence. *Hamilton v. Sec. of Health and*

*Human Servs.*, 961 F.2d 1495, 1497-98 (10th Cir. 1992).  Substantial evidence is evidence a reasonable mind would accept as adequate to support a conclusion.  *Brown v. Sullivan*, 912 F.2d 1194, 1196 (10th Cir. 1990).  "It requires more than a scintilla of evidence but less than a preponderance of the evidence."  *Gossett v. Bowen*, 862 F.2d 802, 804 (10th Cir. 1988).

"Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion."  *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992).  Further, "if the ALJ failed to apply the correct legal test, there is a ground for reversal apart from substantial evidence."  *Thompson v. Sullivan*,  987 F.2d 1482, 1487 (10th Cir. 1993).

The ALJ's decision must be evaluated "based solely on the reasons given stated in the decision."  *Robinson v. Barnhart*, 366 F.3d 1078, 1084 (10th Cir. 2004).  A post-hoc rationale is improper because it usurps the agency's function of weighing and balancing the evidence in the first instance.  *Carpenter v. Astrue*, 537 F.3d 1264, 1267 (10th Cir. 2008).  Thus, I will not consider post-hoc arguments of the Commissioner.

    B.    <u>The Merits of Plaintiff's Arguments</u>

        1.    <u>The Weighing of the Medical Opinions</u>

I first address Plaintiff's argument that the ALJ improperly weighed the medical source evidence.  The ALJ agreed with and gave weight to the August 2011 Mental RFC Assessment of the state agency physician, Dr. Golon, who did not examine Plaintiff.  (AR 25, 29, 62-63.)  Before addressing Dr. Golon's findings, I first note that consultative physician Dr. Otten opined on the issue of Plaintiff's mental impairments that he "strongly recommend[ed] a psychiatric evaluation for this claimant", and deferred

"psychiatric recommendations to appropriately trained mental health specialist." (*Id.* 544.) The ALJ gave no weight to Dr. Otten's opinion, while completely ignoring Dr. Otten's recommendation of a psychiatric consultation. (*Id.* 24-25.) I find that the ALJ erred in not addressing whether a psychiatric evaluation was necessary in light of Dr. Otten's statement. *See Hawkins v. Chater*, 113 F.3d 1162, 1169 (10th Cir. 1997) ("the ALJ should order a consultative exam when evidence in the record establishes the reasonable possibility of the existence of a disability and the result of the consultative exam could reasonably be expected to be of material assistance in resolving the issue of disability").

As to the ALJ's reliance on Dr. Golon's opinion, Dr. Golon referred to Dr. Otten's opinion and purportedly gave "great weight" to it. (AR 260). However, Dr. Golon also ignored Dr. Otten's recommendation that a psychiatric evaluation be conducted. I thus question at the outset whether Dr. Golon's opinion as a nonexamining medical provider was properly relied on by the ALJ. *See Lee v. Barnhart,* 117 F. App'x 674, 678 (10th Cir. 2004) (an ALJ's reliance on an agency medical consultant's opinion is reasonable only insofar as that opinion is supported by evidence in the case record. . . . In other words, the agency consultant's opinion must itself "find adequate support in the medical evidence") (citing SSR 96-6P, 1996 WL 374180, at *2).

As to Dr. Golon's opinion, he found that Plaintiff was moderately limited in his abilities to carry out detailed instructions, to maintain attention and concentration for extended periods, to complete a normal workday and workweek without interruption from psychologically based symptoms (and perform at a consistent pace), to interact appropriately with the general public, to accept instructions and respond appropriately to

criticism from supervisors, and to get along with coworkers or peers without distracting them or exhibiting extreme behavior. (AR 62.) He further opined that Plaintiff's depression and anxiety would limit him "to only superficial and occasional contact w/ others", and that Plaintiff had the mental RFC for "low stress, simple, repetitive work related activities w/ limited contact w/ other[s]." (*Id.* 63.) The ALJ found, by contrast, that Plaintiff "is unable to perform work involving complex tasks; can only occasionally deal with the general public and co-workers; and can only tolerate minimal supervision." (*Id.* 26.) I agree with Plaintiff that this does not accurately track Dr. Golon's findings, whose opinion the ALJ purportedly gave great weight to, and I am unable from the record to determine how this RFC was assessed. This was also error.

Thus, Dr. Golon's findings that Plaintiff should only perform "low stress" and "repetitive" jobs are not included in the ALJ's RFC. Nor is there any reference to Plaintiff being limited to "superficial" contact with others. I also find that limiting Plaintiff to work that does not involve complex tasks does not correlate with Dr. Golon's finding that Plaintiff should be limited to "simple, repetitive work related activities." (AR 63.) I note in that regard that the simplicity of a job is addressed by the General Educational Development ["GED"] reasoning level ratings. *See Meissl v. Barnhart*, 403 F. Supp. 2d 981, 985 (C.D. Cal. 2005).[2] The reasoning levels go from level 1 to level 6. Dictionary of Occupational Titles, App. C, III, 1991 WL 688702. In Level 1, an individual must be able to "[a]pply commonsense understanding to carry out simple one- or two- step instructions. . . ." *Id.* In Level 2, an individual must be able to "[a]pply commonsense

---

[2] The GED Scale is composed of three divisions: Reasoning Development, Mathematical Development, and Language Development.

understanding to carry out detailed but uninvolved written or oral instructions. . . ." *Id.* In Level 3, an individual must be able to "[a]pply commonsense understanding to carry out furnished in written, oral, or diagrammatic form." None of the levels uses the term "complex" in its definition. The Tenth Circuit has found that the ability to perform simple, routine work "seems inconsistent with level three work", but consistent with level two reasoning. *Hackett v. Barnhart*, 395 F.3d 1168, 1176 (10th Cir. 2005). Here, there is no way to determine how an inability to perform complex tasks translates into these different levels, and thus does not provide adequate guidance about the level of reasoning that Plaintiff could do in a job.

Further, I find error with the fact the ALJ ignored Dr. Golan's finding that Plaintiff was moderately limited in the ability to complete a normal workday and workweek without interruption from psychologically based symptoms (and perform at a consistent pace). In so finding, I recognize the Commissioner's argument that per the Social Security Administration Program Operations Manual System ["POMS"], "a medical consultant's RFC should generally be in a narrative statement without severity ratings or qualifying terms such as "moderate" because "[s]uch terms do not describe function and do not usefully convey the extent of capacity limitation." POMS DI 24510.061, DI 24510.065. Nonetheless, I find that the RFC assessment should adequately take those impairments into account in some form. Otherwise, it would be contrary to Tenth Circuit law requiring that even moderate limitations be accounted for in assessing RFC. *See Baysinger v. Astrue*, No. 11-cv-00333-WYD, 2012 WL 1044746, at *6 (D. Colo. March 28, 2012) (citing *Haga v. Astrue*, 482 F.3d 1205, 1207-08 (10th Cir. 2007)).

The ALJ's error to take into account this finding of Dr. Golon is particularly troubling as there was other evidence that supported this finding. Thus, examining physician Dr. Mallory opined that Plaintiff "would have intermittent periods of an inability to perform occupational tasks" along with "an occasional decrease in work efficiency." (AR 30.) The ALJ gave "little weight" to this opinion, even though he acknowledged that it "was rendered after a thorough examination." (*Id.*) While the ALJ found the opinion was "vague, poorly explained, and inconsistent with the record as a whole" (*id.*), it appeared to be consistent with Dr. Golon's findings that the ALJ "agreed" with. (*Id.* 25.)[3] Similarly, Diana Repke, Psy.D., opined that Plaintiff would experience an occasional decrease in work efficiency or intermittent periods of inability to perform occupational tasks. (*Id.* 574.) Again, the ALJ gave "little weight" to her opinion, without even discussing this particular finding or its consistency with other medical providers' opinions. (*Id.* 29.)[4]

Dr. Mallory's and Dr. Repke's findings discussed above were specific medical findings that the ALJ erred in rejecting in the absence of conflicting evidence. *Washington v. Shalala*, 37 F.3d 1437, 1439 (10th Cir. 1994). Further, the Tenth Circuit

---

[3] The ALJ also found that Dr. Mallory's opinion was not "supported by a persuasive rationale that might shed light on these vague terms" and did not cite "support in the record for them". (AR 30.) However, an ALJ is required to contact the physician when he has questions about an opinion or if the opinion is inadequate to determine whether a disability exists. *McGoffin v. Barnhart*, 288 F.3d 1248, 1252 (10th Cir. 2002) (citing 20 C.F.R. § 404.1512(e)(1) (2001)).

[4] I also note that the Commander's Performance and Functional Statement of Captain Trout supported Dr. Golon's findings (and those of Drs. Mallory and Repke). Captain Trout stated among other things that there were intermittent periods where Plaintiff was unable to perform occupational tasks. (AR 214-15.) While the ALJ stated he gave "moderate weight" to this report (*id.* 30), he certainly did not include this limitation in the RFC, even though it supported the findings of Dr. Golon that the ALJ stated he agreed with.

has made clear that in choosing to reject a medical provider's assessment, "'an ALJ may not make speculative inferences from medical reports and may reject a . . . physician's opinion outright only on the basis of contradictory medical evidence and *not due to his or her own credibility judgments, speculation, or lay opinion.*'" *Langley v. Barnhart*, 373 F.3d 1116, 1121 (10th Cir. 2004) (emphasis in original) (quotation omitted). The ALJ's error in weighing these findings is particularly significant because of a hypothetical question asked of the vocational expert. When asked her opinion about whether "on a frequency of at least two days a week, for an unpredictable period," a person was unable to appropriately interact with the general public, coworkers, or supervisors", the vocational expert opined that would eliminate all competitive employment. (AR 52.)

Accordingly, I agree with Plaintiff that the ALJ erred in weighing the medical evidence, and that a remand is required on this basis. On remand, I also direct the ALJ to properly consider the evidence regarding Plaintiff's GAF scores.[5] "Standing alone, a low GAF score does not necessarily indicate an impairment seriously interfering with a claimant's ability to work." *Lee*, 117 F. App'x at 678. "A GAF score of fifty or less, however, does suggest an inability to keep a job." *Id.* Here, the ALJ cited only to GAF scores of 56, 35 and 70 that were assessed in July and September 2011. (AR 27, citing *id.* 772, 777, and 574.) He did not discuss other GAF scores that were 50 and below,

---

[5] "'The GAF is a 100-point scale divided into ten numerical ranges, which permits clinicians to assign a single ranged score to a person's psychological, social, and occupational functioning." *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1162 n. 1 (10th Cir. 2012).

indicative of serious symptoms. *Lee,* 117 F. App'x at 678. Selective application of the evidence is improper. *Carpenter*, 537 F.3d at 1265.

### 2. Plaintiff's Headaches

I also agree with Plaintiff that the ALJ erred in assessing his headaches, which were analyzed at step two. At the outset, I note that case law prescribes a very limited role for step two analysis. *Lee*, 117 F. App'x at 676-77. "Step two is designed 'to weed out at an early stage of the administrative process those individuals who cannot possibly meet the statutory definition of disability.'" *Id.* at 677 (quotation omitted). "While 'the mere presence of a condition or ailment' is not enough to get the claimant past step two, *Hinkle v. Apfel*, 132 F.3d 1349, 1352 (10th Cir.1997), a claimant need only make a 'de minimus' showing of impairment to move on to further steps in the analysis." *Id.* (quoting *Langley*, 373 F.3d at 1123).

The ALJ stated as follows regarding Plaintiff's headaches:

> The claimant alleges suffering from headaches. However, no objective medical studies have revealed any abnormalities of the brain. Nor are there clinical exam findings that support the claimant's allegations of headaches. The claimant does not take any regular medications for headaches, and related taking only Motrin in the past. Overall, the lack of any objective medical evidence exam findings or significant treatment history demonstrates that the claimant's headaches do not limit his ability to perform basic work activities, and these are accordingly found to be non-severe.

(AR 24.) I find several errors with the ALJ's analysis.

First, the ALJ's assertion that Plaintiff was not taking "regular medication" for headaches is not supported by substantial evidence. Dr. Shores noted on January 30, 2011, that Plaintiff was taking Neurontin for headaches. (AR 276). Second, the ALJ failed to articulate what "objective" medical evidence or exam findings he would have

-10-

expected the record to contain in support of Plaintiff's allegations. He also failed to consider the fact that migraines and chronic headaches may not be diagnosed through diagnostic tests or through physical findings on examinations. *See, e.g.*,*Wiltz v. Barnhart*, 484 F. Supp. 2d 524, 532 (W.D. La. 2006) ("Migraine headaches are particularly unsusceptible to diagnostic testing"); *Ortega v. Chater,* 933 F. Supp. 1071, 1075 (S.D. Fla.1996) (present-day laboratory tests cannot prove the existence of migraine headaches). Many federal district courts recognize that there are no objective medical tests for evaluating migraines/headaches, and hold that there is no requirement that an impairment such as migraines be proven through objective medical findings. *See id.*; *Thompson v. Barnhart*, 493 F. Supp. 2d 1206, 1215 (S.D. Ala. 2006); *Stebbins v. Barnhart,* No. 03-C-0117-C, 2003 WL 23200371, at *2 (W.D. Wis. Oct. 21, 2003) (unpublished); *Diaz v. Barnhart*, No. Civ.A 01-CV-0525, 2002 WL 32345945, at *6 (E.D. Pa. March 7, 2002) (unpublished); *Federman v. Chater,* No. 95 Civ. 2892, 1996 WL 107291, at *2 (S.D.N.Y. March 11, 1996) (unpublished); *see also Creel v. Wachovia Corp.*, No. 08-10961, 2009 WL 179584, at *8 n. 20 (11th Cir. Jan. 27, 2009). I find this to be consistent with Tenth Circuit law that no disease is *per se* excluded from coverage because it cannot be conclusively diagnosed in a laboratory setting. *Sisco v. U.S. Dep't of Health and Human Servs.*, 10 F.3d 739, 744 (10th Cir.1993). Instead, a claimant's disability may "be diagnosed through the use of a technique, either clinical or laboratory, that has been accepted by the medical community." *Id.*

Here, the record contains several annotations of clinical presentations where Plaintiff complained of headaches (AR 250, 531, 551, 552, 776.) Plaintiff told Dr. Craig during an exam that he was experiencing headaches about once per week

-11-

and that when they happen he was unable to do anything.  (*Id.* 552)  Dr. Craig diagnosed migraine headaches secondary to complaints of photosensitivity and nausea on June 29, 2011.  (*Id.* 551, 557.)  The ALJ failed to consider whether Dr. Craig's diagnosis of migraine headaches was a medical finding made through the use of a clinical technique that has been accepted by the medical community.  The ALJ also did not discuss any of the above cited evidence in his decision.  This was error.  *See Briggs v. Massanari*, 248 F.3d 1235, 1239 (10th Cir. 2001) ("Although the ALJ need not discuss all of the evidence in the record, he may not ignore evidence that does not support his decision, especially when that evidence is 'significantly probative'") (quotation omitted).

Also, I question the ALJ's decision to give no weight to Dr. Craig's opinion that Plaintiff "should avoid work that require[s] rapid changes of position, climbing, or balance, and that any job would have to accommodate the claimant's need for rest and quiet due to his headaches."  (AR 25.)  The ALJ states that the opinion was rendered after a single examination, but this is an improper basis to reject the opinion.  Indeed, the ALJ relied in this case on the opinion of an agency physician who had never seen the Plaintiff.  Further, the opinion of an examining physician is entitled to greater weight than the opinion of an agency physician.  *Robinson*, 366 F.3d at 1084.  To the extent the ALJ rejected Dr. Craig's opinion on the basis that it was not consistent with the exam findings of other physicians (AR 25), he does not point to any such evidence.  The ALJ's finding was "stated in conclusory fashion, without reference to 'those portions of the record with which [the doctor's] opinion was allegedly inconsistent.'"  *Krauser v. Astrue,* 638 F.3d 1324, 1331 (10th Cir. 2011) (quotation omitted).  "It may be possible to

assemble support for this conclusion from parts of the record cited elsewhere in the ALJ's decision, but that is best left for the ALJ himself to do in the proceedings on remand." *Id.*  These errors also require a remand.

        3.      <u>Plaintiff's Credibility As To Complaints of Morning Drowsiness</u>

Finally, I find that the ALJ erred in assessing Plaintiff's credibility by improperly disregarding his allegations of morning drowsiness as a side effect of his medications. (AR 29.)  The ALJ stated that Plaintiff "has not reported this to his physicians, despite the fact that they are in the best position to alter his medication type and dosage." (*Id.*) This persuaded the ALJ "that the claimant's allegations of drowsiness are not entirely credible. (*Id.*) However, this finding is not supported by substantial evidence.  The medical evidence of record shows Plaintiff complained about "having difficulty waking up on Seroquel," and that his medications made him feel "drunk" or "overly sedated in the morning. (*Id.* 277, 455, 361, and 579.)  The ALJ either missed or ignored this evidence. An ALJ may not pick and choose among medical reports, using portions of evidence favorable to his position while ignoring other evidence." *Hardman v. Barnhart,* 362 F.3d 676, 681 (10th Cir.2004).  Moreover, credibility findings must be supported by substantial evidence.  *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995).[6]

---

[6] Further, I question the ALJ's reliance on Plaintiff's activities of daily living (AR 25), as he acknowledged that Plaintiff "described daily activities that are fairly limited." (*Id.* 29.)  While the ALJ references Plaintiff's report to Dr. Craig that he could "shower, vacuum, drive, shop, and garden" (*id.*), "limited activities in themselves do not establish that one can engage in light or sedentary work."  *Talbot v. Heckler*, 814 F.2d 1456, 1462-63 (10th Cir. 1987).  Moreover, at the hearing the ALJ did not question Plaintiff about his daily activities or allow him to explain the extent to which he could perform these activities.

III.     CONCLUSION

Based upon the foregoing, I find that the ALJ erred at step two of the analysis in connection with his assessment of Plaintiff's headaches, in evaluating and weighing the opinions of the medical providers, and in assessing Plaintiff's credibility in respect to his allegations of morning drowsiness. All of the above errors may well impact the RFC and the adequacy of the hypothetical question, which must be reassessed on remand. While Plaintiff requests reversal and an immediate award of benefits, I find that this case must be remanded for further fact finding as discussed in this Order. *See Sorenson v. Bowen*, 888 F.2d 706, 713 (10th Cir. 1989) (outright reversal and remand for immediate award of benefits is appropriate only when additional fact finding would serve no useful purpose.). It is therefore

ORDERED that this case is **REVERSED AND REMANDED** to the Commissioner for further fact finding as directed in this Order pursuant to sentence four in 42 U.S.C. § 405(g).

Dated:  March 27, 2014

BY THE COURT:

s/ Wiley Y. Daniel
Wiley Y. Daniel
Senior United States District Judge